# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>v.<br><br>JAMAL D. GENTRY,<br><br>       Defendant. | Case No. 21-CR-164-JPS<br><br>**ORDER** |

   In August 2025, Defendant Jamal D. Gentry ("Defendant") moved to reduce his sentence under Amendment 821 to the United States Sentencing Guidelines ("Guidelines"). ECF No. 54. The motion is fully briefed, including a memorandum from the United States Probation Office for the Eastern District of Wisconsin. ECF Nos. 56, 58, 59. For the reasons stated in this Order, Defendant's motion to reduce his sentence under Amendment 821 will be denied.

**1. FACTUAL BACKGROUND**

   On April 26, 2021, Milwaukee police officers spotted a Ford Focus driving in Milwaukee that they identified as having been reported stolen. ECF No. 32 at 13. Officers attempted to stop the vehicle, but the vehicle fled, reaching speeds in excess of 75 miles per hour. *Id*. After a miles-long chase, the driver—later identified as Defendant—crashed into a tree and fled on foot. *Id*. During this foot chase, Defendant tossed an object into a dumpster, which was later recovered and identified as a stolen firearm. *Id*. Inside the vehicle, officers found an adult female, a sixteen-year-old female, and a four-year-old male. *Id*. Defendant was ultimately apprehended. *Id*. One of

the females informed the officers that they had asked Defendant to let them out of the car before the chase, but he refused and fled. *Id*.

On August 3, 2021, Defendant was indicted by a federal grand jury for possession of a firearm by a felon and charged as an armed career criminal. ECF No. 1. He was later charged in an information with possession of a stolen firearm and ultimately pled guilty to the same, with the charges from the indictment being dismissed. ECF Nos. 32–33. In the operative plea agreement, Defendant agreed to recommend a sentence of at least 70 months, and the Government agreed to recommend no more than 102 months. ECF No. 32 at 5.

At sentencing, the Court determined that Defendant's offense level was 22. ECF No. 47 at 1. His criminal history category was IV. *Id.* His prior criminal convictions resulted in a criminal history score of five. ECF No. 45. Most relevant here, because Defendant committed the instant offense while on supervision for an unrelated state case, he received a further 2-point increase in his criminal history score, resulting in a total criminal history score of seven, which yielded the criminal history category of IV. *Id*. Based on a total offense level of 22 and a criminal history category of IV, the Guidelines imprisonment range was 63 to 78 months. *Id*.; ECF No. 47 at 1.

On January 20, 2023, Defendant was sentenced to 57 months of imprisonment, to run concurrent with his state sentence. ECF No. 48 at 2. This sentence was below the advisory Guidelines range of 63 to 78 months. *Id*. As the Court explained at sentencing, the original intention was to sentence Defendant to 78 months, but because the Bureau of Prisons would not grant Defendant credit for the 21 months he had already served in his state case, the Court deducted those 21 months from the 78-month sentence, arriving at the 57-month sentence ultimately imposed. ECF No. 47 at 2.

While serving his sentence, Defendant appears to have had several disciplinary infractions, including writing a sexually charged letter to a female prison staff member. *See* ECF No. 58 at 3; ECF No. 59 at 1.

**2. LEGAL STANDARD**

In April 2023, the United States Sentencing Commission ("the Commission") proposed Amendment 821 to Congress. *Materials Relating to the 2023 Criminal History Amendment*, U.S. SENT'G COMM'N, https://www.ussc.gov/policymaking/materials-relating-2023-criminal-history-amendment [https://perma.cc/H85M-3SKE] (last visited Jan. 15, 2026). Most relevant here, Part A of Amendment 821 "decreases 'Status Points' by one point for individuals with seven or more criminal history points and eliminates them for individuals with six or less criminal history points" (the "Status Point Amendment"). *Id.* (under "Who is Eligible for Retroactive Application?" heading). "Individuals who received Status Points in their criminal history calculation are eligible for this retroactive reduction." *Id*. In August 2023, the Commission voted to give retroactive effect to this portion of Amendment 821. *Retroactivity Amendment* ("Reader-Friendly" version), U.S. SENT'G COMM'N (Aug. 31, 2023), *available at* https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf [https://perma.cc/KK72-GSCE] (last visited Jan. 15, 2026). Amendment 821 took effect on November 1, 2023. *Id*.

The Court may modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the . . .

Commission pursuant to 28 U.S.C. [§] 994(o)." 18 U.S.C. § 3582(c)(2).[1] "[U]pon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

The Supreme Court explains that "[t]he statute thus establishes a two-step inquiry. A court must first determine that a reduction is consistent with [United States Sentencing Guideline] § 1B1.10 before it may consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in [18 U.S.C.] § 3553(a)." *Dillon v. United States*, 560 U.S. 817, 826 (2010). Specifically:

> Following this two-step approach, a district court proceeding under § 3582(c)(2) does not impose a new sentence in the usual sense. At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, § 1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." § 1B1.10(b)(1).
>
> [. . . .]
>
> At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine

---

[1] Section 994(o) provides that the Commission may "review and revise" the Guidelines. 28 U.S.C. § 994(o).

> whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.

*Id.* at 827.

### 3. ANALYSIS

The Court begins by concluding that Defendant qualifies for relief at step one. Specifically, at the time of sentencing, Defendant received two status points for committing the instant offense while on supervision, which raised his criminal history score from 5 to 7. ECF No. 45. Because the Status Point Amendment retroactively eliminates status points for individuals with six or less criminal history points, Defendant's revised criminal history score of 5 places him in criminal history category III. ECF No. 56 at 2. His offense level would remain unchanged. *Id*. In accordance with this amended provision, Defendant's Guidelines range would be 51 to 63 months imprisonment. *Id*.

The 57-month sentence which the Court imposed is higher than the minimum of the new Guidelines range, which qualifies Defendant to be considered for a sentence reduction. See *Dillon*, 560 U.S. at 827; U.S.S.G. § 1B1.10(b)(2)(A) ("[T]he court shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range"); U.S.S.G. § 1B1.10 app. note 3 (noting that "[i]f the term of imprisonment [originally] imposed was outside the guideline range applicable to the defendant at the time of sentencing, the limitation in subsection (b)(2)(A) also applies"). In other words, the Court has discretion to reduce Defendant's sentence to no lower than 51 months.

The Court therefore turns to step two: whether the § 3553(a) factors indicate that a reduction authorized at step one is warranted. *Dillon*, 560

Page 5 of 10
Case 2:21-cr-00164-JPS     Filed 01/29/26     Page 5 of 10     Document 60

U.S. at 827. The § 3553(a) factors include the following: the nature and circumstances of the offense; the defendant's history and characteristics; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment. Application Note (B)(ii) to § 1B1.10 further expressly directs the Court to "consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Thus, the Court has "substantial discretion to determine . . . whether to grant a sentence reduction." *United States v. Young*, 555 F.3d 611, 612 (7th Cir. 2009)).

In his reply brief, Defendant raises several reasons why his sentence should be reduced. He points out that his institution of incarceration has "poor living conditions, bad influences, [and] no programs available," especially after Defendant was cited for writing a sexual letter to a member of prison staff. ECF No. 59 at 1. He also points out the range of steps he has taken towards self-improvement while incarcerated, including eight "[t]urning points protocol programs," anger management education, drug abuse education, the "self-serv[e]" program (which qualified him for any kitchen job), a commercial driver license course, a financial literacy course, and kitchen and orderly jobs. *Id*. It is unclear what Defendant means when he says the prison lacks programs, insofar as he lists many programs he was able to participate in; however, the Court infers that, *after* the sexual letter infraction, Defendant may have been restricted from certain further programs and that he may have completed at least some of the programs referenced *before* this infraction. He points out that he has taken the time to

read educational materials and has "reflected on [his] past, identified the factors that influenced [his] bad choices and found solutions as to how to avoid situations that even give [him] a[n] option to make a bad choice." *Id*. He discusses missing 11 years of his daughter's life and goes on to note that additional incarceration would not serve to deter him any further, as he already sees the "bigger picture . . . clearly." *Id.* He references the support that he would have outside of prison, including his mother and aunt, as well as his drive to stay on the straight and narrow path—largely motivated by his daughter. *Id.* at 2.

For its part, the Government makes three primary arguments as to why Defendant's sentence should not be reduced. First, it points out that Defendant already received a favorable plea, insofar as he avoided the possibility of enhanced Armed Career Criminal penalties. ECF No. 58 at 6. This favorable plea came despite the seriousness of his conduct, which included possession of a firearm and an attempt to flee from police while passengers, including a four-year-old child, were in his vehicle. *Id.* at 7. Second, Defendant's initial sentence included the benefit of non-mandatory concurrent time, which ultimately placed Defendant's sentence squarely in the middle of the updated Guidelines range. *Id*. Thus, the Government argues, the Defendant should not receive the benefit of a further reduction when his sentence was already exactly what was anticipated by the Guidelines. *Id*. Third, and finally, the Government argues that Defendant's conduct while incarcerated militates against any reduction. *Id*. Defendant has had multiple infractions, including writing a sexually charged letter to a female staff member, which the Government argues speaks to a need for continued incarceration. *Id*.

The Court is compelled by the Government's arguments. As an initial matter, the Government is correct that Defendant received enormous benefit from his plea agreement. He avoided the possibility of being deemed an Armed Career Criminal. This reduced his sentencing exposure dramatically; in exchange, he waived any right to argue that his sentence should be lower than 70 months if the plea was accepted by the Court. ECF No. 32 at 5. The agreement was accepted, and the Court "sees no reason that Defendant should no longer be held to that agreement, particularly after having reaped its benefits." *United States v. Starks*, No. 06 CR 324-22, 2021 WL 496399, at *7 (N.D. Ill. Feb. 10, 2021), *aff'd*, No. 21-1295, 2021 WL 5507036 (7th Cir. Nov. 24, 2021). Fundamentally, reducing Defendant's sentence would "contravene" his plea agreement, insofar as it would represent Defendant arguing for a lower sentence than 70 months. *Id.* But perhaps more significantly, reducing Defendant's sentence would undermine the bargain represented by the plea agreement—the balance of benefits and restrictions agreed to by the parties. *See United States v. Rogers*, No. 21-CR-45-JPS, 2024 WL 3756309, at *5 (E.D. Wis. Aug. 8, 2024) ("Here, as the Court concluded when it accepted the plea agreement, there is no doubt that Defendant received enormous benefit from his plea agreement. Reducing his sentence would undermine that benefit." (citations omitted)).

In addition, Defendant ought not be granted a further reduction when his current sentence already falls squarely within the range contemplated by the updated Guidelines calculation. Defendant was granted non-mandatory concurrent time, which led to him receiving a 57-month sentence. ECF No. 47. This is directly within the 51-to-63 month updated Guidelines range. ECF No. 56. The Court's initial analysis resulted in a sentence below the original Guidelines range and well within the

Page 8 of 10
Case 2:21-cr-00164-JPS   Filed 01/29/26   Page 8 of 10   Document 60

updated Guidelines range. With the reduced criminal history category now accounted for by the Guidelines, it is unclear why the Court should go even lower—what in its prior analysis has become inapt? Especially where the Court's initial intention was to sentence at the upper end of the Guidelines range, and the sentence was reduced only to ensure that time served was accounted for, the Court does not see a compelling reason why an already shortened sentence that falls within the new Guidelines range should be further reduced.

Third, and perhaps most significantly, as the Government rightly points out, Defendant's conduct while incarcerated indicates that a reduction in sentence would be inappropriate. The government avers that Defendant "has had several disciplinary infractions while incarcerated." ECF No. 58 at 3. Specifically, Defendant has "twice refused work assignment, once refused a housing assignment," and "admitted to writing a 'sexually charged letter to [a female] staff [member] informing her what he would do to her.'" *Id*. Defendant, for his part, almost entirely disregards this history, only vaguely referencing the "sexual letter." ECF No. 59. While Defendant references substantial gains that he has made while incarcerated—particularly in terms of taking advantage of educational opportunities—these factors do not erase his infractions, which also represent a core part of his history and reflect a lack of respect for what the legal system asks of him.

Defendant's arguments do not change the calculus. The 57-month sentence appropriately reflects the seriousness of Defendant's offense—which involved a high-speed chase with a small child in the car—and protects the public. The fact that Defendant has taken advantage of the educational opportunities afforded to him in prison indicates that the

Page 9 of 10
Case 2:21-cr-00164-JPS    Filed 01/29/26    Page 9 of 10    Document 60

custodial setting is providing him with effective training, care, and treatment and is the appropriate place for him to be at this time. Most importantly, Defendant's crime was dangerous and serious, and releasing him now would undermine, and could indeed pose additional threats to, the public's protection. Accordingly, although Defendant is eligible for a reduction under the Status Point Amendment, the § 3553(a) factors indicate that such a reduction is not warranted. Defendant's motion will be denied.

4. **CONCLUSION**

For the reasons set forth above, the Court denies Defendant's motion to reduce his sentence under Amendment 821. ECF No. 54.

Accordingly,

**IT IS ORDERED** that Defendant Jamal D. Gentry's motion to reduce his sentence under Amendment 821, ECF No. 54, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 29th day of January, 2026.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge